**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | No. 1:06-CR-253-EGS |
| ) | |
| **PRINCE ANTHONY BLAKE** ) | |

<u>Government's Memorandum in Aid of Sentencing</u>

The United States of America, by and through the United States Attorney for the District of Columbia, submits the following memorandum in aid of sentencing.

<u>Background</u>

On January 9, 1985, defendant Prince Anthony Blake, a native and citizen of Jamaica, was admitted into the United States as a lawful permanent resident. He was 10 years old at the time.

Beginning at the age of 18 and continuing up until the age of 23, the defendant was repeatedly arrested in D.C. and Maryland, and once in Delaware. Typically, the defendant had a pending case or was on probation when arrested. The following account summarizes his criminal record during this period.

On March 30, 1993, the defendant was arrested in Washington, D.C., for possession of marijuana. It was his third arrest in less than four months, and the two earlier arrests, for possession of marijuana and misdemeanor theft, were still active cases at the time.[1]

---

[1] The two earlier cases stemmed from arrests on December 7, 1992, and January 11, 1993. The 1992 case, a possession of marijuana charge in D.C., was pending when the defendant was arrested on January 11 in Maryland for the theft charge. Both of

While the March 1993 marijuana charge was pending, he was arrested again in D.C., on July 14, 1993, for distribution of marijuana in the District of Columbia. While both charges were pending, the defendant was arrested for possession of marijuana, again in the District of Columbia, on September 30, 1993. He was subsequently found guilty of the July and September offenses and placed on probation.[2] While on probation, he was arrested in Maryland, on November 4, 1994, for possession of marijuana, and, while that case was pending, he was arrested again on February 7, 1995, in D.C., for armed kidnaping.[3]

On March 29, 1995, his probation was revoked in the D.C. possession case and he was sentenced to 45 days in jail. On July 28, 1995, the defendant's probation was revoked in the distribution case and he was sentenced to 15 days in jail.

On November 17, 1995, while the kidnaping charge was still pending, the defendant was arrested in Maryland for carrying a concealed deadly weapon, and driving with a suspended license. On February 8, 1996, he was found guilty of the weapons offense and placed on one year of probation before judgment. On April 4, 1996, he was convicted in the traffic matter and sentenced to 10

---

these cases were subsequently dismissed in 1993.

[2] The March 1993 marijuana distribution charge was eventually dismissed later that year.

[3] The 1994 Maryland marijuana charge was later placed on the "stet" docket. The kidnaping charge in D.C. was later dismissed.

days in jail, execution suspended, and ordered to pay a $100 fine and $50 in costs.

On June 12, 1997, he was arrested in Delaware for willfully falsifying a vehicle identification number and possession of a non-narcotic controlled substance, along with two other charges. On October 8, 1997, he was convicted on the VIN and controlled substance charges and sentenced to six months of incarceration on each charge, execution suspended, and placed on a total of 12 months of probation. While on probation for these Delaware offenses, the defendant was arrested again in D.C., on February 26, 1998, for possession of marijuana. On September 16, 1998, a violation of probation was filed in the Delaware matters, which remains pending. On September 25, 1998, again in the Delaware matters, a capias was filed, which remains pending.

The above account, extensive as it is, omits several other arrests, only because they did not result in convictions and did not occur while other charges were pending.[4]

The defendant was deported to Jamaica on May 6, 1999, putting a temporary halt to his criminal activities in the United States. Although it is unclear precisely when he illegally returned to the United States,[5] he was next arrested again on

---

[4] The government concedes that a 1995 armed robbery case in Maryland is incorrectly attributed to this defendant in NCIC.

[5] Notably, a second capias was filed against him in his Delaware matters on January 3, 2001.

July 6, 2006, in Maryland, on drug charges (not involving marijuana).

This case was still pending[6] when he was arrested on July 19, 2006. Not surprisingly, the defendant, who was pulled over for a traffic violation near the intersection of Franklin Street and Lincoln Road, N.E., was found to be in possession of marijuana, and, in fact, was actively smoking it while he drove through the streets of the city. In addition to two sandwich bags of marijuana and a marijuana "blunt," the police also seized $2058 in currency. He was also in possession of a fraudulent Maryland photo identification card, identifying him as Bruce Howard Smith, Jr.

Although charged with possession of marijuana and held overnight, the defendant was taken directly into administrative custody by the Bureau of Immigration and Customs Enforcement on July 20, 2006, and the marijuana charge stemming from the July 19 arrest was dismissed the following day.

On July 28, 2006, he was charged by complaint with illegally re-entering the United States, and an arrest warrant was issued. The defendant, who had been in continuous ICE administrative custody, appeared on the warrant on August 2, 2006. He has been ordered held in this case since that date.

---

[6]The government is unaware of the disposition of this matter. Furthermore, the probation officer has been unable to verify that the defendant was arrested in Maryland on July 6.

<u>The Charge of Conviction and the Statutory Maximum</u>

On September 15, 2006, the defendant waived indictment and, pursuant to a plea agreement, pleaded guilty to an information charging him with felony re-entry by a previously deported alien, in violation of 8 U.S.C. § 1326. That code section sets forth three different statutory maximum prison terms, application of which generally depends on the criminal history of the alien. Specifically, if the alien had been deported after being convicted of an "aggravated felony," the statutory maximum prison term is 20 years. 8 U.S.C. § 1326(b)(2). If deportation followed a conviction only for a non-aggravated felony, or for three or more misdemeanors involving drugs or crimes against the person, the maximum prison term is generally 10 years. <u>Id.</u> § 1326(b)(1). If the defendant does not have such a criminal record, the maximum term is generally 2 years.[7] <u>Id.</u> § 1326(a).

Because of uncertainty about some aspects of the defendant's criminal record, he was warned at the time of the guilty plea that the statutory maximum prison term was 20 years. With the benefit of the pre-sentence report, as well as the government's own research into his history, the government submits that the

---

[7] The statute also provides that regardless of any criminal record, the basis for the alien's prior deportation (which can be based on matters other than the alien's conviction record) can elevate the statutory maximum from two years to 10, and from 10 years to 20. Those provisions, however, are inapplicable here.

defendant has a prior (non-aggravated) felony conviction that renders him eligible for the 10 year maximum.

Specifically, the defendant's 1996 Maryland weapons case qualifies as a non-aggravating felony conviction for purposes of 8 U.S.C. § 1326. It does not matter that the defendant received "probation before judgment" in that case, nor does it matter that Maryland law classifies the offense as a misdemeanor.

First, 8 U.S.C. § 1326(b)(1) states that the 10 year maximum applies to an alien deported "subsequent to a conviction for . . . a felony (other than an aggravated felony)." The term conviction is defined for purposes of this provision as

> a formal judgment of guilt of the alien entered by a court, or if adjudication of guilt has been withheld, where–
>
> (I) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt and
>
> (ii) the judge has ordered some for of punishment, penalty, or restraint on the alien's liberty to be imposed.

Id. § 1101(a)(48)(A). Under Maryland law, both at the time of his offense and now, a defendant must admit guilt or plead nolo contendere, in order to receive probation before judgment. See Md. Code Art. 27, § 641(a) (1957) (repealed 2001 and recodified as Md. Code, Cr. Proc., § 6-220(b)). Accordingly, the offense qualifies as a prior conviction for purposes of 8 U.S.C. § 1326.

The Immigration and Nationality Act, codified generally at 8 U.S.C. ch. 12 (INA), does not define "felony" for purposes of 8 U.S.C. § 1326.  At the time probation was imposed on the defendant for the weapons offense, the crime was classified by Maryland law as a "misdemeanor" but was punishable by up to three years of incarceration.  See Md. Code art. 27, § 36(a)(1) (repealed 2002).[8]

The U.S. Court of Appeals for the Tenth Circuit recently considered the definition of the term "felony" as used in 8 U.S.C. § 1326.  In United States of America v. Cordova-Arevalo, 456 F.2d 1229 (10th Cir.), cert. denied, 2006 WL 3244478, at *1 (S. Ct., Dec. 4, 2006), the defendant was convicted of re-entry by a deported alien and was sentenced to 57 months in prison. Id. at 1231.  On appeal, he argued his sentence was statutorily capped at two years in prison, pursuant to 8 U.S.C. § 1326(a), because he had no prior qualifying felony conviction for purposes of 8 U.S.C. § 1326(b).  Id.  Specifically, although he conceded he had a prior conviction in Colorado for third degree assault, for which he had received 10 days in jail, he argued that because Colorado classified the offense as a misdemeanor, he had no

---

[8]Under current Maryland law, the classification and maximum punishment for the offense remain the same.  See Md. Code, Crim. Law, § 4-101(d)(1).

felony conviction that would elevate the maximum sentence for illegal re-entry beyond two years. Id. at 1230-31 & n. 3.[9]

The Tenth Circuit Court of Appeals upheld the sentence. The court first noted that pursuant to 18 U.S.C. § 3559(a), federal offenses punishable by at least more than one year of imprisonment are classified as various grades of felonies. Id. at 1233. That statutory classification provision, enacted in 1984 and effective in 1987, the court held, made it "unmistakable" that Congress intended to rely on that provision in determining the definition of a felony for purposes of the penalty enhancements in 8 U.S.C. § 1326(b), which were enacted in 1988. Id. The court further held that such a construction "furthers the Congressional quest for uniformity in federal sentencing." Id. Accordingly, the court held that the term felony in the INA means any offense punishable by more than one year in prison. Id.

Although the Tenth Circuit appears to be the only circuit to have addressed this issue at the appellate or district court level, as the court noted in Cordova-Arevalo it was already well established in that circuit that the INA's definition of

---

[9] Although not mentioned in the court's opinion, the parties agreed that the maximum sentence under Colorado law for the crime of third degree assault was greater than one year in prison. See Brief of Appellee, United States v. Cordova-Arevalo, No. 05-2013, 2005 WL 2481607, at *5 (10th Cir., July 18, 2005); Brief-in-chief of Appellant, United States v. Cordova-Arevalo, No. 05-2013, 2005 WL 2367665, at *1 (10th Cir., June 22, 2005).

aggravated felony encompasses state-law misdemeanors.  See id. at 1233 (citing United States v. Saenz-Mendoza, 287 F.3d 1011 (10th Cir. 2002).  That earlier holding, which allows the maximum sentence for illegal re-entry to go as high as 20 years in prison based on a prior conviction of the alien for what state law defines to be a misdemeanor, is a well accepted principle (albeit not yet decided in this circuit).  See United States v. Cordoza-Estrada, 385 F.3d 56, 58 (1st Cir. 2004); United States v. Gonzalez-Tamirez, 310 F.3d 1168, 1170-71 (9th Cir. 2002), cert. denied, 538 U.S. 1008 (2003); United States v. Urias-Escobar, 281 F.3d 165, 167-68 (5th Cir. 2002); United States v. Gonzalez-Vela, 276 F.3d 763, 768 (6th Cir. 2001); United States v. Christopher, 239 F.3d 1191, 1193-94 (11th Cir. 2001); United States v. Pacheco, 225 F.3d 148, 154 (2d Cir. 2000); United States v. Graham, 169 F.3d 787, 791-93 (3d Cir. 1999).

The government submits that the Tenth Circuit's decision in Cordova-Arevalo is correct and urges the Court to hold that the maximum sentence of imprisonment in this case is 10 years.  With that statutory maximum, the statutory maximum supervised release period is three years, pursuant to 18 U.S.C. §§ 3559(a)(3) and 3583(b)(2).  The statutory maximum fine is unaffected by the foregoing discussion; pursuant to 18 U.S.C. § 3571, it is $250,000, or twice the gain or loss attributable to the offense, whichever is greatest.

<u>Application of the Sentencing Guidelines</u>

As noted in the Presentence Report, the defendant's conviction of the Maryland weapons offense, if confirmed by court records,[10] would merit a four-level enhancement as a specific offense characteristic, pursuant to U.S.S.G. § 2L1.2(b)(1)(D). Application of that enhancement would yield an adjusted offense level of 10, after taking into account a two-level downward adjustment for the defendant's acceptance of responsibility.

The government agrees, however, that due to the lapse of time since the conviction and the length of the sentence imposed, no points are assessed for it in calculating the defendant's criminal history. See U.S.S.G. § 4A1.2(e). Accordingly, the defendant's criminal history category is unaffected by the Maryland weapons case and he remains in Category II, as determined by the PSR.

---

[10] As noted in the PSR, the government believes it will have adequate court documentation supporting the Maryland weapons conviction by the time of sentencing. The government, however, takes issue with the PSR's statement that pursuant to <u>United States v. Price</u>, 366 U.S. App. D.C. 166, 409 F.3d 436 (2005), this prior conviction cannot be considered without such documentation. In fact, <u>Price</u> holds only that the government must present sufficient proof of a prior conviction whenever its existence is disputed by the defendant. <u>Id.</u> at 174-75, 409 F.3d at 444-45. The defendant, in his objections to the initial PSR and in his sentencing memorandum, at no point states that he disputes that he received a sentence of probation without judgment for carrying a dangerous weapon, in Maryland in 1996. In fact, in his sentencing memo he specifically agrees that he faces a statutory maximum prison term of 10 years, which is only possible if he concedes that he has a prior felony conviction.

10

With an adjusted offense level of 10 and a criminal history category of II, the defendant faces a guideline range of imprisonment of 8 to 14 months, which is within zone C of the Sentencing Table.  See id. ch. 5, pt. A.  Under U.S.S.G. § 5C1.1(d) and (e), for the sentence to be guideline-compliant, a defendant facing a zone C sentence must serve at least half of the minimum prison term through imprisonment, but the balance of up to the maximum guideline prison term may be met through home detention, imposed as a condition of supervised release.  Thus, the Court may impose a guideline-compliant "prison term" in this case by sentencing the defendant to 4 months in prison with an additional 4 to 10 months of home detention, as a condition of supervised release.  The maximum guideline-compliant prison term of course is 14 months.

As for the guideline fine and supervised release ranges, with an adjusted offense level of 10, the defendant faces a fine range of $2000 to $20,000, id. § 5E1.2, and a supervised release range of two to three years, id. § 5D1.2(a)(2).

### The Plea Agreement and the Appropriate Sentence

Pursuant to the plea agreement, the parties agreed to allocute for a sentence within the guideline range.  The government submits that the appropriate sentence, considering the factors set out in 18 U.S.C. § 3553(a), is a prison term of 14 months and a supervised release term of three years.  As a

special condition of supervised release, the defendant should be required not to oppose any deportation proceedings and, if deported, to remain outside the United States for the remainder of the entire supervised release period.  See 18 U.S.C. § 3583(d)(1).  The government takes no position on any fine to be imposed.

   1.  The Nature and Circumstances of the Offense and the Characteristics of the Defendant

As set out above, the defendant had a pending criminal matter in Delaware and may have also had been on release from a Maryland charge when he was found to be illegally in the United States on July 19, 2006.  In addition, at the time of his arrest, he was in possession of marijuana, was actively smoking it as he was driving, and was using fraudulent identification.  Considering also the defendant's well established pattern of committing new offenses on release prior to his deportation, this first set of factors militates strongly in favor of a sentence at the top end of the applicable guideline range.

   2.  The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

While not the most serious of crimes, the offense of illegal re-entry by a deported alien is particularly galling when one considers that all the government was asking in terms of compliance with the law is that the alien stay out of the United States.  The Sentencing Guidelines already take into account the

relatively non-serious nature of this crime.  However, to promote respect for the law and to justly punish this defendant, a prison sentence of anything less than the guideline maximum of 14 months would not suffice, as this defendant not only came back to this country, he continued to engage in the drug activity that got him deported in the first place.

    3.    <u>The Need for the Sentence Imposed to Afford Adequate Deterrence</u>

Based on this defendant's history of noncompliance with pre-trial release and probation conditions, he clearly is a poor risk for a sentence that requires any degree of self-control, such as home confinement.  Moreover, a sentence structured merely to speed his deportation is insufficient given the very nature of this offense.

    4.    <u>The Need for the Sentence to Protect the Public From Further Crimes</u>

When he is in this country, the defendant has a well established habit of committing crimes, albeit mostly minor ones, on a regular basis.  In order to protect the public, the maximum guideline sentence should be imposed, following which he should be promptly deported.

    5.    <u>The Need for the Sentence to Provide the Defendant With Needed Education, Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

In his own sentencing memorandum, the defendant asserts no deficiency in education, vocational training, or medical care,

and seeks no correctional treatment. Thus, there is no need for the Court's sentence to reflect any leniency on the basis of these factors.

6. <u>The Kinds of Sentences Available</u>

While as a statutory matter, probation is not precluded in this case, the defendant's criminal history strongly indicates that he is a poor risk for any sentence that anticipates active court supervision.

7. <u>The Sentencing Guidelines, Policy Statements of the U.S. Sentencing Commission, The Need to Avoid Unwarranted Sentence Disparities, and the Need to Provide Restitution to Victims</u>

Application of the Sentencing Guidelines is discussed above. The government is unaware of any Commission policy statements specifically applicable here. Because the very purpose of the guidelines is to avoid unwarranted sentencing disparities, <u>see</u> 28 U.S.C. § 994(f), a guideline sentence avoids such disparities. There is no victim in this matter for whom restitution is appropriate.

Conclusion

The defendant is subject to a maximum prison term of 10 years, a maximum fine of $250,000, and a maximum supervised release term of three years. He faces a maximum guideline sentence of 14 months in prison, a $20,000 fine, and a three-year period of supervised release.

Under the plea agreement, the parties have agreed to allocute for a guideline sentence. For the reasons outlined above, the Court should impose the maximum guideline prison term, and the maximum supervised release term, with a special condition that the defendant remain out of the United States if deported.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

by: _____/s/_____
Michael C. Liebman
Assistant United States Attorney
D.C. Bar No. 479562
555 Fourth Street, N.W., room 4231
Washington, D.C.  20530
353-2385
michael.liebman@udsoj.gov